2021 IL App (2d) 190860-U
No. 2-19-0860
Order filed March 1, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| ANNAMARIA ASHCRAFT, and her husband, ) <br> RONALD ASHCRAFT, ) <br> ) <br>     Plaintiffs-Appellants, ) <br> ) <br> v. ) <br> ) <br> ROCKFORD MEMORIAL HOSPITAL, ) <br> ROCKFORD HEALTH PHYSICIANS, ) <br> ROCKFORD HEALTH SYSTEMS, ) <br> WILLIAM COWDEN, M.D., and RONALD ) <br> WASHAK, D.O., ) <br> ) <br>     Defendants-Appellees. ) | Appeal from the Circuit Court <br> of Winnebago County. <br><br><br><br><br> No. 16-L-74 <br><br><br><br><br><br> Honorable <br> Donna R. Honzel, <br> Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices McLaren and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Plaintiffs' failure to develop argument regarding trial court's alleged improper application of discovery rules resulted in forfeiture of issue on appeal; (2) the trial court did not refuse to revise discovery schedule; and (3) the trial court properly granted defendants' motion for summary judgment in medical malpractice action where plaintiffs neither brought forth an expert to support their allegations nor demonstrated a change in circumstances warranting denial of summary judgment.

¶ 2    This appeal arises out of a medical malpractice action filed by plaintiffs, Annamaria

Ashcraft and her husband, Ronald Ashcraft, against defendants, Rockford Memorial Hospital,

Rockford Health Physicians, Rockford Health Systems, William Cowden, M.D., and Ronald Washak, D.O. As a result of plaintiffs' failure to disclose an Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) expert in accordance with the trial court's discovery orders, defendants moved for summary judgment. The trial court granted defendants' motion and later denied plaintiffs' motion to reconsider its ruling. On appeal, plaintiffs challenge the trial court's decision to grant defendants' motion for summary judgment. They also contend that the trial court abused its discretion "in the application of discovery rules" and that the trial court's refusal to revise the Rule 213(f)(3) schedule constituted "an unduly harsh discovery sanction." Finding none of plaintiffs' arguments persuasive, we affirm.

¶ 3                                                          I. BACKGROUND

¶ 4      On March 7, 2016, plaintiffs filed a 15-count medical malpractice complaint against defendants arising out of care provided to Annamaria in 2014. Among other things, the complaint alleged that Dr. Cowden was negligent in that he failed to properly perform an incisional ventral hernia repair and he failed to properly place drains so as to prevent disfigurement to Annamaria. Similarly, the complaint alleged that Dr. Washak was negligent in that he failed to properly perform a panniculectomy and failed to properly place drains so as to prevent disfigurement to Annamaria. The complaint also included, *inter alia*, claims of negligence against Rockford Memorial Hospital, Rockford Health Physicians, and Rockford Health Systems under an agency theory and claims of loss of consortium against all named defendants on behalf of Ronald, who is Annamaria's spouse. The case was assigned to Judge J. Edward Prochaska.

¶ 5      The complaint did not include a report from a reviewing physician as required by section 2-622(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-622(a)(1) (West 2016)). Instead, pursuant to section 2-622(a)(2) of the Code (735 ILCS 5/2-622(a)(2) (West 2016)), Cynthia Koroll,

plaintiffs' attorney, attached an affidavit to the complaint stating that she was unable to obtain such a report "because the statute of limitations would impair this action and consultation could not be obtained before the expiration of the statute of limitations." See 735 ILCS 5/2-622(a)(2) (West 2016)).[1]

¶ 6    On June 6, 2016, Koroll filed an amended affidavit, stating that she had "consulted and reviewed the facts of the case with a health professional who is a board-certified medical doctor licensed to practice medicine in all its branches." Koroll also stated that the health professional is knowledgeable about the issues involved in the action, has practiced within the last six years in the same area of health care that is at issue in this case, and has determined in a written report, after a review of the medical record and other relevant material involved in the particular action, that there is a reasonable and meritorious cause for the filing of such action. Koroll further stated that she had concluded on the basis of the health professional's review and consultation that there is a reasonable and meritorious cause for the filing of such action. Attached to Koroll's affidavit was a three-page affidavit from an unidentified physician stating that Drs. Cowen's and Washak's treatment of Annamaria deviated from the standard of care and that such deviation caused injury to Annamaria.[2]

---

[1] Section 2-622(a)(2) provides that if an affidavit is executed pursuant to that paragraph, the report required by section 2-622(a)(1) "shall be filed within 90 days after the filing of the complaint." 735 ILCS 5/2-622(a)(2) (West 2016).

[2] Section 2-622(a)(1) of the Code (735 ILCS 5/2-622(a)(1) (West 2016)) provides that "information which would identify the reviewing health professional may be deleted from the copy" of the physician's report attached to the complaint.

¶ 7 On July 7, 2016, defendants filed their answer to plaintiffs' complaint. Thereafter, discovery ensued, with the trial court entering various discovery orders. Annamaria's discovery deposition was taken on January 12, 2017. During the deposition, upon questioning by Koroll, Annamaria testified that following the procedures performed by Drs. Cowden and Washak, another physician, Dr. Donald McCanse, performed several surgical debridements with the assistance of nurse Heidi Kendall.[3] Annamaria further testified that she did not sign any surgical consent documents in conjunction with these procedures. On September 20, 2017, plaintiff deposed Kendall. In her deposition, Kendall stated that, according to her records, she only saw Annamaria on one occasion. Koroll subsequently indicated that she would be amending plaintiffs' complaint to add Kendall as a defendant. At that point, Kendall's attorney stopped the deposition, stating that it could resume when Kendall was named as a defendant so that she would be aware of the allegations she needed to defend.

¶ 8 On February 21, 2018, the parties appeared before the trial court for a hearing on the status of discovery. At that time, the trial court entered an order: (1) requiring defendants to supplement their discovery responses within 14 days to identify Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) employed physicians, nurses, and other individuals and (2) closing Illinois Supreme Court Rule 213(f)(1) and 213(f)(2) (eff. Jan. 1, 2018) discovery. On March 21, 2018, the parties again appeared before the trial court for a hearing on the status of discovery. At the time, the trial court entered an order: (1) noting that Dr. McCanse's deposition was scheduled for May 24, 2018;

---

[3] Plaintiffs' March 7, 2016, complaint references two surgical procedures performed by Dr. McCanse, including a debridement on September 8, 2014, but the complaint does not name Dr. McCanse as a defendant.

(2) requiring plaintiffs to disclose their Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) controlled experts by July 15, 2018; (3) requiring defendants to depose plaintiffs' Rule 213(f)(3) controlled experts by September 15, 2018; (4) requiring defendants to disclose their Rule 213(f)(3) controlled experts by November 15, 2018; and (5) requiring plaintiffs to depose defendants' Rule 213(f)(3) controlled experts by January 15, 2019. The March 21, 2018, order also set the case to be tried beginning on March 11, 2019, "with the 60 day requirement waived."

¶ 9    As scheduled, Dr. McCanse was deposed on May 24, 2018. During his deposition, Dr. McCanse testified that he debrided Annamaria's wounds with the assistance of Kendall or another nurse "two or three times."[4]

¶ 10    On June 13, 2018, the next status date, Koroll advised that she would be filing a motion for leave to file an amended complaint. The trial court entered an order requiring plaintiffs to file their motion for leave, attaching a copy of the proposed amended complaint, "within three weeks." Plaintiffs neither filed a motion for leave to file an amended complaint within the three-week time frame nor requested an extension of time to file such a motion. Additionally, plaintiffs did not disclose their Rule 213(f)(3) controlled experts by the July 15, 2018, deadline and they did not request an extension of time to make their disclosures. At a hearing on August 1, 2018, plaintiffs advised the court of their intent to file a motion to reset the trial date. The trial court entered an order that same date requiring plaintiffs to file their proposed motion "before 8/29/18" and setting a hearing on the matter for August 29, 2018.

---

[4] The record filed in this appeal only includes four pages of Dr. McCanse's deposition testimony.

¶ 11 On August 15, 2018, defendants filed a motion for summary judgment. Defendants asserted that in their supplemental Rule 213(f)(2) and partial 213(f)(3) filing, they disclosed both Drs. Cowden and Washak as witnesses who will testify that they fully satisfied all applicable standards of care. Defendants further asserted that plaintiffs were ordered to disclose their Rule 213(f)(3) witnesses by July 15, 2018, but failed to do so. Defendants argued that due to plaintiffs' failure to disclose any expert who can testify that defendants deviated from the proper standard of care or that the deviation proximately caused plaintiffs' injuries, the only testimony to be presented at trial will be the affirmative testimony of Drs. Cowden and Washak that they fully complied with the standards of care in their treatment of Annamaria. Due to the absence of evidence from plaintiffs to prove their case, defendants contended that they met their burden of proof for summary judgment. Defendants' motion was entered and continued to September 26, 2018.

¶ 12 Meanwhile, on August 29, 2018, plaintiffs filed a "Motion to Revise Rule 213(f)(3) Schedule and to Continue Trial Date." Among the reasons plaintiffs set forth in their motion for revising the Rule 213(f)(3) schedule and continuing the trial date were: (1) defendants' late response to written discovery in 2016; (2) defendants' allegedly incomplete responses and supplemental responses to written discovery; (3) the "curtail[ing]" of Dr. Washak's deposition; (4) the suspension of Kendall's deposition; (5) Koroll's "rigorous schedule;" and (6) Koroll's scheduled medical leave from October 26, 2018, through November 19, 2018, which will prevent her from being present for depositions and other proceedings. Plaintiffs presented the motion to the court at a hearing on August 29, 2018. At that hearing, Koroll also represented that she filed a motion for leave to file an amended complaint.[5] The court continued the matter to September 12,

---

[5] The record on appeal does not contain a motion for leave to file an amended complaint

2018, to allow defendants the opportunity to review plaintiffs' motions. On September 12, 2018, the trial court entered a briefing schedule on all pending motions with oral argument set for late in November. Subsequently, the parties agreed to extend the briefing schedule and it was so amended by the trial court in an order dated November 20, 2018. In accordance with the November 20, 2018, order, defendants filed a response to plaintiffs' motion for leave to file an amended complaint on January 4, 2019. Plaintiffs never filed a response to defendants' motion for summary judgment.

¶ 13    On January 23, 2019, the matter came before Judge Donna Honzel for oral argument on defendants' motion for summary judgment, plaintiffs' motion to revise Rule 213(f)(3) schedule and continue trial date, and plaintiffs' motion for leave to file an amended complaint.[6] The first issue that was addressed was plaintiffs' motion for leave to amend the complaint. The court stated that it did not see a section 2-622 affidavit attached to the proposed amended complaint. Koroll responded that she would be relying on the previously filed section 2-622 report. Later, Koroll suggested that she did not file a new section 2-622 affidavit and report because she was not yet given leave to file the proposed amended complaint. She added, however, that it would be "very simple *** to get" a new section 2-622 report. In response, defendants' counsel argued that the section 2-622 affidavit and report submitted with the original complaint was insufficient to support the proposed amended complaint because it contained new allegations involving Kendall and Dr. McCanse. The court concluded that an additional 2-622 certification was required to be filed with

---

on that date. However, defendants' attorney acknowledged at the August 29, 2018, proceeding that she had received an email from Koroll containing a motion to continue and a motion for leave to file an amended complaint.

[6] Judge Honzel took over the case following Judge Prochaska's retirement.

the amended complaint. The court, noting that Koroll represented that it would be "a very simple matter" to obtain, asked Koroll how long it would take for her to obtain the proper certification on file for the proposed amended complaint. Koroll responded that she "could do it within 14 days." Ultimately, the court continued plaintiffs' motion for leave to file an amended complaint and granted plaintiffs seven days to file their proposed amended complaint "along with fully [and] legally sufficient Rule 2[-]622 affidavits."

¶ 14    The court then turned to the Rule 213(f)(3) schedule with respect to the original complaint. The court asked Koroll about the allegations in the original complaint and plaintiffs' continued failure to disclose a Rule 213(f)(3) expert. Koroll responded that she did not have "adequate responses to interrogatories on those matters," adding that given the motion to file an amended complaint, it did not seem "appropriate" to file a Rule 213(f)(3) disclosure. The court stressed that plaintiffs needed an expert to testify as to the allegations against defendants in the original complaint. The trial court noted that Judge Prochaska gave plaintiffs until July 15, 2018, to disclose their Rule 213(f)(3) experts. The court added that "it is incumbent upon all parties to comply with the Court's orders and *** [if] those deadlines and orders imposed by the Court cannot be met *** to promptly and before the expiration of the deadline file a motion to indicate what the issue is, why in good faith the Court's order previously needs to be altered, amended, changed, extended or whatever the case may be." The court observed that "to get to the 2-622 that [plaintiffs] originally filed [they had to] have someone in [their] pocket that [they] apparently have been talking about, discussing the case with, who has given [them] the opinions that *** allowed [them to] file [their complaint] to begin with." Yet, plaintiffs not only missed the deadline set by Judge Prochaska, but also failed to offer any explanation or file a motion as to why they could not timely file their Rule 213(f)(3) disclosure. Koroll requested an additional 60 days to file the disclosure,

acknowledging that this would defeat the trial date of March 11, 2019, or 45 days if the court would not allow for more. Ultimately, the court entered a written order providing that, as it pertains to the defendants named in the original complaint, plaintiffs "shall file legally sufficient (f)(3) disclosures at the soonest date possible but in no event will the Court accept same after 2/22/19 [at] 5 pm."

¶ 15    With respect to the motion for summary judgment, Koroll opined that it was moot because it was filed after she was given permission to file a motion to continue. Defendants asserted that summary judgment was appropriate because plaintiffs failed to meet the disclosure deadline for their Rule 213(f)(3) experts. The court stated that "[a]s it stands right now, obviously the motion for summary judgment is well taken," but added that it was not going to rule on the motion for summary judgment in light of its decision to grant plaintiffs 30 days to file their Rule 213(f)(3) disclosures pertaining to the allegations in the original complaint. The court explained that "[d]epending upon what happens with your disclosures and depending on what happens when we come back, it may be that we proceed on the motion for summary judgment as to the original complaint." Further, the court told Koroll:

> "So understand, I hope, Ms. Koroll, I have made it absolutely clear—the case law is very clear that it is within my discretion. I would be completely within my discretion to grant the motion for summary judgment and deny your leave for amend [*sic*]. I'm still not so sure that maybe that's not what I should be doing. The only reason that I'm not, is because Judge Prochaska did give you to the 29th *** but I still have a significant problem with the fact that you have not, in all the time, filed your (f)(3)s for the original complaint and that still remains a problem which is why I'm not deciding the motion for summary judgment at this point.

\* \* \*

Obviously, I'm telling you, Ms. Koroll, that \*\*\* I would grant the motion for summary judgment if you don't have [the Rule 213(f)(3) disclosure] \*\*\* within the 30 days from today's date."

The court continued defendants' motion for summary judgment and all other issues to February 1, 2019.

¶ 16    On January 31, 2019, plaintiffs filed a "Motion to Compel Discovery Answers and Responses from All Defendants, Pursuant to Illinois Supreme Court Rule 201(b)." In their motion, plaintiffs argued that defendants' responses to plaintiffs' original interrogatories filed in March 2016 were inadequate. Also on January 31, 2019, plaintiffs filed a "Motion to Withdraw Motion to File Amended Complaint," asserting that they were unable to obtain a section 2-622 affidavit to support the new allegations in time to meet the court-imposed deadline.

¶ 17    On February 1, 2019, defendants' attorney appeared in court. Koroll did not appear, but texted defense counsel, informing her that she had filed a motion to compel as well as a motion to withdraw her motion for leave to amend. The trial court entered a briefing schedule on the motion to compel and set the matter for hearing on March 20, 2019. In addition, the court granted plaintiffs' motion to withdraw their amended complaint, struck the March 11, 2019, trial date, noted that the orders of January 23, 2019, remain, and set status on the matter for March 14, 2019. On February 6, 2019, defendants filed a "Motion to Strike Plaintiff's [*sic*] Motion to Compel Discovery and to Reinstate Trial Date." In their motion to strike, defendants asserted that plaintiffs' motion to compel was not filed within 60 days of trial as required by local court rule (17th Judicial Cir. Ct. R. 10.07 (June 14, 2011)), was untimely under Illinois Supreme Court Rule 213(d) (eff. Jan. 1, 2018), and appeared to be a maneuver to postpone the trial.

¶ 18 On February 21, 2019, the parties appeared in court for presentation of defendants' motion to strike and reinstate the trial date. At the hearing, defendants noted that plaintiffs' motion to compel related to discovery responses that were filed more than two years earlier. Plaintiffs represented that the motion to compel was in reference to defendants' supplemental responses. During the February 21, 2019, hearing, the trial court twice stressed to Koroll that the "more glaring" issue was the Rule 213(f)(3) disclosure deadline the very next day. Koroll indicated that she understood and also informed the court of her intention to file another, unspecified motion that she wanted set for March 14. The trial court announced that it would "take up" the motion for summary judgment and the motion to compel at the March 14, 2019, date. In a written order entered following the hearing, the trial court denied that portion of defendants' motion seeking reinstatement of the trial date, set a briefing schedule on the motion to strike, and set the motion to compel and the motion to strike for hearing on March 14, 2019. The order also provided that defendants' motion for summary judgment "remains set" for March 14, 2019, and the deadline for plaintiffs to file their Rule 213(f)(3) disclosures "remains set" for February 22, 2019.

¶ 19 On March 14, 2019, defendants' attorney appeared in court as scheduled. Koroll was not present, but attorney Howard Rigsby appeared as substitute counsel. Defense counsel informed the court that defendants' motion for summary judgment was pending and that plaintiffs had not disclosed their Rule 213(f)(3) experts by the February 22 deadline. Rigsby stated he was present "to beg for time" for Koroll and stated Koroll had "medical issues." The trial court recognized that it "is always difficult when an attorney is battling a variety of medical issues," but noted that "these are issues that have been going on for a really long time." Rigsby then asked for 14 days to allow Koroll to appear. Defendants objected. The court responded:

"Yeah, at this point, the only reason that the plaintiff [*sic*] was given an extension of time for (f)(3) disclosures was because she filed a motion to amend the complaint. And then when her deadline for the motion *** to file the amended complaint *** came and went and she indicated that she would not be filing an amended complaint. I told her at that time, *** [and] the [written] order says, in no event would the Court accept a disclosure after February 22nd and on February 21st the matter was in court at which time I reminded Ms. Koroll who acknowledged that she was well aware of her deadline of February 22nd, *** [and] implied by her answer that not only was she well aware of it but that she had it under control, it didn't seem to be an issue.

And for what it's worth, at least from the Court's observation, she did not appear ill on the 21st, did not claim to be ill, did not indicate there was going to be any issue or problem whatsoever with meeting the 2/22 deadline which, again, the Court was exceedingly clear that [it] would accept no disclosure after the 22nd ***. And at the same time, continued the motion for summary judgment to today's date over the objection of the defendant [*sic*] setting it out this far.

So [defendants'] motion for summary judgment is heard and granted over the objection of the plaintiff [*sic*]. That probably disposes of every issue."

The trial court entered a written order in accordance with its ruling, granting defendants' motion for summary judgment and dismissing plaintiffs' complaint with prejudice "for reasons stated on the record."

¶ 20    On April 11, 2019, plaintiffs filed a motion to reconsider the trial court's order of March 14, 2019, listing a multitude of reasons why the trial court erred in granting defendants' motion for summary judgment. On April 17, 2019, a briefing schedule was entered on the motion to

reconsider. As part of that briefing order, plaintiffs were allowed to file a memorandum of law by May 5, 2019. On May 22, 2019, defense counsel informed the court that plaintiffs had not filed their memorandum. In response, the court entered an amended briefing schedule granting plaintiffs until May 29, 2019, to file their memorandum. Oral argument was set for July 24, 2019. Plaintiffs did not file the memorandum of law by the date provided in the amended briefing schedule, but defense counsel agreed to an extension of the filing date to June 3, 2019. On June 7, 2019, plaintiffs filed a motion requesting until June 10, 2019, to file their memorandum. In support of the request, plaintiffs cited Koroll's "extreme workload" and "new matters [that had] come to her attention in her office." Koroll filed an identical motion for extension of time on June 18, 2019. The parties appeared before the court on June 27, 2019, for plaintiffs to present their motion for an extension of time. At the hearing, defendants objected to the extension and indicated that they were prepared to file a response to plaintiffs' motion to reconsider the following day. Koroll then withdrew her motion for an extension of time and stated that she would devote her efforts to replying to defendants' response.

¶ 21    Defendants filed their response to plaintiffs' motion to reconsider on June 28, 2019. Plaintiffs did not file a reply to defendants' response. On July 24, 2019, a hearing was held on plaintiffs' motion to reconsider. Koroll appeared in court with a written memorandum and "case law to accompany [her] oral argument." Defendants objected to any further briefing of the issue, arguing that the court set a briefing schedule and plaintiffs failed to meet the deadline to file a memorandum or reply brief. Defendants therefore contended that Koroll should not be permitted to present "anything new" at the hearing. Koroll then proceeded to discuss the cases she had brought. Ultimately, the trial court stated that Koroll's actions in failing to present argument or case law in advance to defendants and the court "has the look and feel" of "intentional sandbagging

to try to gain an advantage." The court added that Koroll does not "really care what the Court's orders are in terms of deadlines or procedures. And that is the whole reason that [she] got [her]self into [this] mess." The court declined to accept plaintiffs' written memorandum but entered an order continuing the hearing to September 3, 2019, to give defendants an opportunity to respond to the cases plaintiffs raised in oral argument and to give plaintiffs the opportunity to reply, addressing any cases cited by defendants in their response. Pursuant to the written order, defendants' response was due August 7, 2019, and plaintiffs' reply was due August 14, 2019.

¶ 22     Defendants filed their response on August 7, 2019. On August 15, 2019, one day after the deadline to file their reply, plaintiffs filed a motion seeking an extension until August 19, 2019, to file their reply, citing Koroll's medical appointments and other court matters. On August 20, 2019, plaintiffs filed an amended motion, seeking an extension until August 21, 2019, this time citing "flight cancellations." Plaintiffs did not file their reply by August 21, 2019. Nevertheless, they proceeded to present the motions to the court on August 22, 2019. Defendants objected. The trial court denied the motions. The written order memorializing the decision barred plaintiffs from raising new case law not cited in the briefs at the September 3, 2019, hearing.

¶ 23     The parties appeared before the trial court on September 3, 2019, for continued oral argument on plaintiffs' motion to reconsider. At the outset, the court noted that Koroll spent approximately one hour and fifteen minutes arguing her motion at the hearing on July 24, 2019. The court stated that it did not expect "a long additional argument" and that it wanted Koroll to "wrap up any last closing arguments" that she had. In response, Koroll asked the court to reconsider its decision barring her from discussing additional cases, indicating that she had only addressed two or three of her eleven arguments. The court stated:

"Ms. Koroll, the only reason that I told you that you were limited to the four cases that you cited during the argument last time was because we had a brief scheduling order that was amended. You had a deadline. You missed the first deadline. We did a second brief scheduling order and you were given a date to reply. You did not reply and then on the day of argument you came in with a stack of material and I believe I used the word sandbagging as my interpretation of that effort. *** [Y]ou had an opportunity, you had two different dates to reply. You said you were not going to file anything in writing and then on the day of you came with a big stack of things in writing as well as with case law and the reason I limited you to the four was because you blew your chance to file something where the defense would have had the appropriate time to review your case law and respond to it and then argue it. That's how we do things and I know you're well aware of this.

And so I limited you to the four that you argued over an extensive period of time out of fairness so that there weren't any additional last minute pulling out of cases because that would just make things even longer because, for example, if today you told me, I have 10 more cases that I would like to argue, then the means we get absolutely nothing done. All the time that anybody has spent to get ready for today is wasted once again. The Court's time is again wasted. Because, if, for example, I allowed you to put out these 10 more cases then I would have to suspend things to allow [defense counsel] time to respond to any of those 10 cases that she wished to do. And invariably, if history is any indicator, we would be right back here with an indication that you wanted more cases to cite at the last minute and then this cycle would repeat.

So the only reasons, as I said, for those four, was because you decided not to file anything and then at the last second, literally, pull out an additional case law. And so I did allow you to argue. I did not think that you were going to be giving more than the general review, but you definitely went into four different cases and after an hour and 10 minutes, I think, conservatively, might have been a little bit longer. *** In any event, normally I don't restrict parties to the number of cases, but it was a circumstance of—borne of your design."

Koroll then indicated that she wanted to make an offer of proof as to the memorandum of law that the trial court would not let her file at the previous hearing. The trial court responded that it would not accept the offer of proof. Following additional discussion, Koroll then proceeded with her argument. Defense counsel responded that the motion to reconsider should be denied because plaintiffs had not produced new evidence or law or argued a misapplication of the law. At the close of oral argument, the trial court denied the motion to reconsider. On October 1, 2019, plaintiffs filed a notice of appeal.

¶ 24                                                    II. ANALYSIS

¶ 25    On appeal, plaintiffs challenge the trial court's summary judgment ruling and its "application of discovery rules." Specifically, plaintiffs contend that the trial court erred in granting defendants' motion for summary judgment "based on the representation that [plaintiffs] could not obtain [Illinois] Supreme Court Rule 213(f)(3) witnesses before trial." Plaintiffs also contend that summary judgment was improper because "changes in the circumstances warranted the reopening of discovery." In addition, plaintiffs argue that the trial court abused its discretion "in the application of discovery rules" and that its refusal to revise the Rule 213(f)(3) schedule

"constituted an unduly harsh discovery sanction." We will address plaintiffs' challenges to the court's discovery rulings before turning to the issue of summary judgment.

¶ 26                                                                A. Discovery

¶ 27     Plaintiffs vaguely contend that the trial court "abused its discretion in the application of discovery rules." In support of this claim, plaintiffs discuss Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) and assert that "sanctions are to be imposed only when noncompliance with discovery rules or orders is found to be unreasonable and the order entered is just." They then state that they "sought one extension of a discovery order in this case," the trial court "provided little relief," they (plaintiffs) "did not timely disclose but did seek to compel discovery," and the trial court granted summary judgment. Plaintiffs' argument is not entirely clear. Plaintiffs' failure to clearly define this issue or present any cohesive argument in support of their claim of error results in forfeiture of this issue on appeal. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring the appellant's brief to include argument containing the contentions of the appellant and the reasons therefore, with citation of the authorities and the pages of the record relied on and providing that points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing); *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 63 (noting that the failure to properly develop an argument and support it with relevant authority results in forfeiture of the issue on appeal).

¶ 28                                             B. Rule 213(f)(3) Schedule

¶ 29     We next address plaintiffs' claim that the trial court's "refusal to revise the Supreme Court Rule 213(f)(3) schedule was an unduly harsh discovery sanction." We review the trial court's discovery rulings for an abuse of discretion. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 138. An abuse of discretion occurs when the trial court's ruling is

arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position taken by the trial court. *Control Solutions, LLC v. Elecsys*, 2014 IL App (2d) 120251, ¶ 38.

¶ 30    Plaintiffs' argument on this issue is not clear. The only filing in the record requesting the court to revise the Rule 213(f)(3) schedule is the motion filed by plaintiffs on August 29, 2018. This motion was eventually continued to a hearing on January 23, 2019. Contrary to plaintiffs' claim, however, the trial court did not refuse to revise the Rule 213(f)(3) schedule. Rather, at the January 23 hearing, the trial court *granted* plaintiffs an additional 30 days to file "legally sufficient" Rule 213(f)(3) disclosures pertaining to defendants named in the original complaint. Given that the trial court granted plaintiffs the relief they requested, their claim that the trial court court's "refusal to revise the Supreme Court Rule 213(f)(3) schedule was an unduly harsh discovery sanction" finds no basis in the record.

¶ 31                              C. Summary Judgment

¶ 32    Plaintiffs challenge the trial court's decision to grant defendants' motion for summary judgment on two grounds. First, plaintiffs contend that the trial court improperly granted summary judgment "based on the representation that [they] could not obtain [Illinois] Supreme Court Rule 213(f)(3) witnesses before trial." Second, plaintiffs argue that the trial court erred in granting summary judgment because "changes in circumstances warranted the reopening of discovery."

¶ 33    The Code allows a defendant to move for summary judgment "at any time." 735 ILCS 5/2-1005(b) (West 2016)). The purpose of a motion for summary judgment is to determine whether a genuine issue of material fact exists. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14. "Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, when viewed in the light most favorable to the nonmovant, reveal that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of

law." *Smith v. Bhattacharya*, 2014 IL App (2d) 130891, ¶ 12; see also 735 ILCS 5/2-1005(c) (West 2016). Because summary judgment is a drastic means of resolving litigation, it should be allowed only when the right of the moving party is clear and free from doubt. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review a trial court's grant of summary judgment *de novo*. *Holten v. Syncreon North America, Inc.*, 2019 IL App (2d) 180537, ¶ 25.

¶ 34     In a medical malpractice action, it is the plaintiff's burden to present evidence establishing (1) the standard of care against which the defendant's conduct should be measured, (2) an unskilled or negligent failure to comply with the applicable standard of care, and (3) a resultant injury to the plaintiff proximately caused by the defendant's deviation. *Purtill v. Hess*, 111 Ill. 2d 229, 241-42 (1986); *Shicheng Kuo v. Kamal*, 2020 IL App (1st) 190090, ¶¶ 18-19. " 'Generally, expert testimony is needed to support a charge of malpractice because jurors are not skilled in the practice of medicine and would find it difficult without expert testimony to determine a lack of skill or care on the part of a physician.' " *Smith*, 2014 IL App (2d) 130891, ¶ 14 (quoting *Rohe v. Shivde*, 203 Ill. App. 3d 181, 192-93 (1990)). It is well settled that if a plaintiff fails to come forward with expert testimony of a violation of the appropriate standard of care, summary judgment is proper. *Smith*, 2014 IL App (2d) 130891, ¶ 20; *Rohe*, 203 Ill. App. 3d 181, 192-93 (1990); *Smock v. Hale*, 197 Ill. App. 3d 732, 738 (1990); *Bennet v. Raag*, 103 Ill. App. 3d 321, 327 (1982).

¶ 35     Thus, for instance, in *Smith*, the plaintiff filed a medical malpractice action in 2009 based on the defendants' alleged negligence that occurred in 2007. The plaintiff voluntarily dismissed the suit but refiled it in November 2010. In December 2012, the trial court set trial for January 2014 and entered a discovery schedule requiring the plaintiff to disclose his expert witnesses by March 1, 2013. Prior to the discovery deadline, the plaintiff filed a motion to revise the discovery order and the court extended the disclosure date to May 6, 2013. On May 29, 2013, after the

plaintiff failed to comply with the discovery deadline, the defendants moved for summary judgment. Attached to the summary judgment motion was a deposition from the defendant physician stating that he had complied with the standard of care. At a hearing on the motion, the plaintiff indicated that he had scheduled a meeting with an expert on June 21, 2013. The trial court set a response date on the motion for summary judgment for June 26, 2013, and a hearing on the motion for July 30, 2013. The trial court stated that it had devised the schedule to allow the plaintiff the opportunity to present an expert in his response. On June 28, 2013, the plaintiff filed a response contending that it would be unfair to grant summary judgment. In addition, the plaintiff requested an additional 30 days to make the required disclosures, asserting, among other things, that the trial was more than six months away. By the July 30, 2013, hearing date, the plaintiff still had not disclosed an expert and had not provided any expert evidence in response to the motion for summary judgment. The trial court stated that had the plaintiff produced an affidavit at the hearing stating that he had an expert, it probably would have granted him additional time. However, since six years had passed since the alleged negligence and because the plaintiff had missed multiple opportunities to disclose an expert, the trial court granted the defendants' motion for summary judgment.

¶ 36    On appeal, the plaintiff contended that the trial court entered summary judgment as a sanction for late discovery. The plaintiff argued that this was improper because there was no evidence that he willfully abused the discovery process and the trial was more than six months away. We disagreed, holding that the trial court did not specifically enter a sanction against the plaintiff for failure to disclose his expert, but rather properly granted summary judgment on the basis that, without an expert, plaintiff could not prove his case. *Smith*, 2014 IL App (2d) 130891, ¶¶ 13, 23. We explained that the plaintiff had ample opportunities to locate an expert but had failed

to do so. *Smith*, 2014 IL App (2d) 130891, ¶ 20. In this regard, six years had passed since the alleged negligence and the hearing on the motion for summary judgment, the litigation had been ongoing for more than two years, the plaintiff represented that he had set up a meeting with an expert but never disclosed one, the plaintiff did not otherwise provide evidence that he could obtain an expert, and the delays indicated that the plaintiff was unable to retain an expert. *Smith*, 2014 IL App (2d) 130891, ¶ 20. We acknowledged that the trial date was over six months away and that the time for discovery had not closed but noted that the trial court set reasonable deadlines and gave the plaintiff multiple opportunities to comply with them. *Smith*, 2014 IL App (2d) 130891, ¶ 21. We emphasized that if discovery rules are to have any force or effect, "the time left before trial or for completing discovery must be viewed as irrelevant." *Smith*, 2014 IL App (2d) 130891, ¶ 21.

¶ 37     In *Bennett*, the plaintiffs filed a medical malpractice claim against the defendants in November 1975. The defendants filed interrogatories early in 1976, requesting the names and addresses of all expert witnesses upon whom the plaintiffs would rely at the time of trial. The plaintiffs did not respond, and, on August 2, 1976, the trial court entered an order granting the plaintiffs 28 days to answer the interrogatories. The plaintiffs failed to timely name an expert by the deadline. In the years that followed, the trial court granted the plaintiffs multiple extensions to disclose their expert witnesses. Late in 1980, the defendant physicians filed separate motions for summary judgment supported by affidavits. The plaintiffs' replies to the motions for summary judgment did not contain any affidavits. The trial court granted the defendants' motions, and the plaintiffs appealed. On appeal, this court found summary judgment appropriate because the plaintiffs failed to present evidence to contradict the affidavits filed by the defendants, there was no evidence that the plaintiffs would have been able to obtain expert medical evidence to refute

the specifics contained in the defendants' affidavits, and the plaintiffs failed to request additional time to obtain such testimony. *Bennett*, 103 Ill. App. 3d at 327-28; see also *Rohe*, 203 Ill. App. 3d at 193-98 (upholding summary judgment in the defendants' favor where the plaintiffs failed to present a counter-affidavit or expert testimony to refute assertions made in the affidavit of the defendant physician).

¶ 38     Turning to the facts in this case, we conclude that the trial court properly granted summary judgment in defendants' favor. Both Dr. Cowden and Dr. Washak, the defendant physicians, were disclosed as witnesses who would testify that they fully satisfied all applicable standards of care. Despite being afforded ample time to do so, plaintiffs have not identified any expert who will testify that defendants deviated from the applicable standards of care or that any such deviation proximately caused plaintiffs' injuries. At the time the trial court granted summary judgment, five years had passed since defendants' alleged negligent care of Annamaria and the current litigation had been ongoing for three years. During the course of the proceedings, plaintiffs were given multiple opportunities to disclose an expert witness but failed to act. The initial Rule 213(f)(3) discovery order, entered on March 21, 2018, gave plaintiffs until July 15, 2018, to disclose any expert. Plaintiffs neither disclosed their Rule 213(f)(3) experts by the deadline nor did they request an extension of time to make their disclosures. On August 15, 2018, defendants filed their motion for summary judgment based on plaintiffs' failure to name an expert. In the months that followed, plaintiffs took no action to identify an expert, connect how anything defendants did resulted in their inability to find and disclose an expert, indicate that they were having difficulty finding an expert, or respond to the summary judgment motion. On January 23, 2019, the matter came before the trial court for oral argument on defendants' motion for summary judgment. At that time, the trial court noted that plaintiffs had not disclosed an expert with respect to their complaint. The

court also stressed the importance of complying with court-imposed deadlines. The court granted plaintiffs until February 22, 2019, an additional 30 days, to identify any expert. Plaintiffs again failed to comply with the deadline. In addition, they did not attempt to file a Rule 213(f)(3) disclosure between the February 22, 2019, deadline, and the March 14, 2019, hearing at which the trial court granted defendants' motion for summary judgment. As the foregoing demonstrates, the trial court set reasonable deadlines and gave plaintiffs multiple opportunities to comply with them but plaintiffs failed to name an expert. And while plaintiffs insist that at no time did they assert they were unable to obtain a Rule 213(f)(3) expert, the fact that they did not identify an expert in the nearly one year between the entry of the initial Rule 213(f)(3) disclosure order and the grant of summary judgment strongly suggests that plaintiffs were unable to obtain one. Without an expert, plaintiffs could not prove their case. Accordingly, we conclude that the trial court properly granted defendants' motion for summary judgment.

¶ 39 Despite their failure to disclose an expert in support of their claim, plaintiffs, citing to *Cometo v. Foster McGaw Hospital*, 167 Ill. App. 3d 1023 (1988), *Kubian v. Labinsky*, 178 Ill. App. 3d 191 (1988), and *Smock v. Hale*, 197 Ill. App. 3d 732 (1990), claim that the trial court failed to address changed circumstances warranting the denial of summary judgment and the reopening of discovery.

¶ 40 In *Cometo*, the plaintiff in a medical malpractice action failed to comply with the trial court's initial order requiring him to disclose his expert by August 1, 1985. The court subsequently entered a second order extending the period for disclosure to January 7, 1986. The plaintiff identified his expert prior to the court's deadline. However, the expert subsequently refused to testify on the plaintiff's behalf. The court entered a third order requiring the plaintiff to disclose his expert by April 18, 1986. The plaintiff failed to meet the third deadline, so the court barred the

plaintiff from presenting expert testimony at trial as a sanction. The case was placed on the trial call for September 10, 1986, but, at some point, was continued to March 12, 1987, by agreement of the parties. In August 1986, the defendants moved for summary judgment, which motions were later amended to attach the necessary affidavits of their experts. In his response to the defendants' motions, the plaintiff attached the affidavit of his previously-disclosed expert who had changed his mind and agreed to testify on the plaintiff's behalf. The trial court struck the affidavit of the plaintiff's expert because he had been barred from presenting expert testimony. In addition, the trial court granted defendants' motions for summary judgment on the ground that absent expert medical testimony, the plaintiff could not meet his burden of proving negligence.

¶ 41     On appeal, the *Cometo* court noted that a plaintiff in a medical malpractice suit often faces obstacles stemming from the reluctance of the medical community to testify against each other. *Cometo*, 167 Ill. App. 3d at 1029. The court found that the plaintiff faced this obstacle where, "through no fault of his own," his previously-disclosed expert refused to testify. *Cometo*, 167 Ill. App. 3d at 1029-30. However, the plaintiff's expert later changed his mind again and decided to testify. *Cometo*, 167 Ill. App. 3d at 1029-30. The court determined that the renewed willingness of the plaintiff's expert to testify, coupled with the parties' agreement to continue the trial date for six months, constituted sufficient changes in circumstances from those that existed when the trial court imposed sanctions barring the plaintiff from presenting expert testimony. *Cometo*, 167 Ill. App. 3d at 1029-30. Indeed, the court observed that the plaintiff's ability to show at the time of the summary judgment hearing that he had an expert witness who could testify as to the defendant's negligence constituted grounds for avoiding summary judgment in a medical malpractice action. *Cometo*, 167 Ill. App. 3d at 1030. Accordingly, the court concluded that the plaintiff did not act in contumacious disregard of the trial court's orders, reversed the entry of summary judgment, and

reopened discovery to allow the plaintiff to disclose any expert witnesses. *Cometo*, 167 Ill. App. 3d at 1029-31.

¶ 42    In *Kubian*, the plaintiffs filed a medical malpractice action against the defendant physician. The plaintiffs missed multiple dates set for the disclosure of experts. The plaintiffs then obtained an expert, but he later decided not to testify. During the course of these proceedings, the plaintiffs' original attorney left the law firm that was representing them. After their original expert withdrew, the plaintiffs contacted another medical professional but needed additional time for him to review the medical records. The trial court granted the plaintiffs' request for an extension of time but they again missed the deadline. Upon the motion of the defendant, the trial court dismissed the plaintiffs' action. At the time of the dismissal, a trial date had not yet been set. The plaintiffs then filed a motion for reconsideration and sought time to obtain additional experts. A partner of the firm representing the plaintiffs stated that the attorney who took over the case after the original attorney left was newly admitted and had failed to adequately present the facts of the case to the original expert. The partner contacted the expert and obtained an affidavit from him stating his opinion that the defendant was negligent. The trial court denied the motion for reconsideration, and the plaintiffs appealed.

¶ 43    On appeal, the *Kubian* plaintiffs maintained that, as in *Cometo*, the renewed willingness of their expert witness to testify after his earlier refusal to do so coupled with the fact that no trial date had been set in the matter, constituted sufficient changes in circumstances to warrant the vacatur of the order of dismissal. The *Kubian* court discussed *Cometo* and noted the plaintiffs' repeated noncompliance with discovery, but ultimately held that the noncompliance did not rise to the level of a deliberate, contumacious disregard for the trial court's authority so as to warrant dismissal of the action given that in the months preceding the dismissal the plaintiffs advised the

court that their expert had refused to testify, that their attorney had left the law firm, and that the medical records had been sent to a prospective, named expert by the attorney who assumed responsibility for the case. *Kubian*, 178 Ill. App. 3d at 199-201. The court further observed that while sanctions were appropriate and it was not unsympathetic to the trial court "whose fair and patient attempts to compel discovery were repeatedly frustrated by unexplained noncompliance with his orders," the trial court had other means of enforcement at its disposal and could have imposed progressively harsher sanctions proportionate to the gravity of the violations to compel discovery rather than dispose of the litigation in the pretrial stage. *Kubian*, 178 Ill. App. 3d at 201-02. The court further noted the lack of prejudice to the defendant "since the affidavit given by [the original expert] and attached to the sworn motion to [reconsider] together with the summary of his credentials supplied to [the] defendant eight months earlier contained most of the general information sought by [the] defendant in the supplemental interrogatories" and because of the lack of an impending trial date. *Kubian*, 178 Ill. App. 3d at 202. Accordingly, the *Kubian* court reversed the order dismissing the action. *Kubian*, 78 Ill. App. 3d at 202.

¶ 44    In *Smock*, the plaintiff instituted a medical malpractice suit against the defendant physician alleging negligent medical care of a pregnant patient with a history of Crohn's disease. The trial court entered a discovery scheduling order. The plaintiff timely disclosed Dr. Richard Taylor, a board-certified gastrointestinal surgeon, as her medical expert. Subsequently, however, without the leave of court and following her disclosure deadline, the plaintiff proposed Dr. Stephen Hanauer, her treating gastroenterologist, as a second medical expert. Upon the defendant's motion, the trial court struck Dr. Hanauer as a medical expert on the basis that he was not timely disclosed. Subsequently, the defendant moved to disqualify Taylor as a medical expert on the basis that he had failed to establish his familiarity with the standard of care applicable to a family practice

physician in downstate Illinois. The trial court granted the motion to disqualify. The plaintiff subsequently filed a motion to amend her list of medical experts to include all treating physicians as witnesses. The defendant objected, and the trial court denied the motion to amend. The defendant subsequently filed a motion for summary judgment asserting that the plaintiff had failed to show any present ability to offer competent medical testimony on the applicable standard of care. The plaintiff subsequently filed a motion to vacate the order disqualifying Taylor as a medical expert, the initial order scheduling discovery in the action, and the order striking Hanauer as a medical expert. The trial court denied the plaintiff's motions to vacate and subsequently granted the defendant's motion.

¶ 45    On appeal, the plaintiff challenged the trial court orders disqualifying Taylor as a medical expert, refusing to vacate the scheduling order for discovery, and granting the defendant's motion for summary judgment. Initially, the *Smock* court determined that the trial court improperly disqualified Taylor as a medical expert. *Smock*, 197 Ill. App. 3d at 738-40. The reviewing court then noted that the trial court acted within its authority in entering a scheduling order for discovery and in sanctioning the plaintiff for failing to disclose Hanauer as her expert medical witness in a timely manner. *Smock*, 197 Ill. App. 3d at 741. Nevertheless, the effect of the sanction, coupled with the erroneous disqualification of Taylor, "effectively precluded the plaintiff from presenting the full factual basis of her cause." *Smock*, 197 Ill. App. 3d at 741. Invoking *Cometo*, the court found no evidence that the plaintiff engaged in abusive discovery practices and determined that any delay in the disposition of the cause "may be attributed to the difficulties both litigants experienced in securing qualified medical experts" as well as "unforeseen circumstances which necessitated assignment of several different judges to the case." *Smock*, 197 Ill. App. 3d at 741.

Correspondingly, the reviewing court reversed the grant of summary judgment. *Smock*, 197 Ill. App. 3d at 741-42.

¶ 46    We find plaintiffs' reliance on *Cometo*, *Kubian*, and *Smock* misplaced. Those cases are easily distinguishable from the present case. Significantly, in all three cases, the plaintiffs identified experts willing to testify on their behalf, but subsequently encountered discovery problems. In *Cometo*, the expert who was disclosed during discovery became reluctant to provide testimony, but later had a change of heart and became willing to testify. Similarly, in *Kubian*, the plaintiffs' expert refused to testify, but later changed his mind. In *Smock*, the trial court improperly disqualified the plaintiff's medical expert and refused to allow her to name another expert. Here, plaintiffs fail to identify a change in circumstances like those addressed in *Cometo*, *Kubian*, or *Smock* which rendered the trial court's grant of summary judgment improper. Indeed, as noted above, at no point during this litigation did plaintiffs either name *any* expert willing to testify on their behalf or represent to the court that they could do so.

¶ 47    Plaintiffs also argue that defendants would not suffer any prejudice by an additional delay because the trial court struck the May 11, 2019, court date and did not reschedule it. As we noted in *Smith*, however, "if the discovery rules are to have any force or effect, the time left before trial or for completing discovery must be viewed as irrelevant." *Smith*, 2014 IL App (2d) 130891, ¶ 21. We find this passage particularly apt here, where plaintiffs repeatedly failed to comply with the trial court's orders at almost every stage of the litigation.

¶ 48                                III. CONCLUSION

¶ 49    The enforcement of reasonable discovery deadlines is necessary for judicial economy and fairness. Here, plaintiffs failed to provide a Rule 213(f)(3) expert by the trial court's initial deadline, within the seven months' time from the initial deadline to the second deadline, in the

month between the second deadline and the trial court's grant of summary judgment, or even within the next six months, while the motion to reconsider was pending. This record clearly reflects that plaintiffs were unable to obtain a Rule 213(f)(3) expert. Accordingly, we affirm the judgment of the circuit court of Winnebago County granting summary judgment in defendants' favor.

¶ 50    Affirmed.